The conduct alleged of my client, which we take as true for the 12 v. 6 motion, is obvious. There is no evidence that my client knew about this executive order or the regulations. But the conduct is inexcusable. I have no question. The assignment, what do we know about the facts surrounding the assignment? I have difficulty telling from whether the assignment is a completed act for which whatever money is going to be paid to an Iranian has already been paid or whether it isn't. Do you understand my question? I do. It's kind of a vaguely worded question. We know nothing about the assignment other than that the plaintiff says he is standing in the shoes of the Iranian and for all purposes this court should treat the Canadian citizen as the Iranian citizen. Well, the reason I'm asking the question is that there is a line of cases that distinguishes between what a court is to do about an executive order contract that is illegal and what a court is to do about a completed illegal contract balancing the equities between the parties that have already completed performance. And so if any money that's going to go to Iran is already there as a done deal, as a result of the assignment, it seems to me that we may be in a different situation if the money is in the future. Absolutely. Indeed, we draw that distinction about all of the cases the court cited first and second. Substantially, where are we? We have an allegation by Mr. Basiji that his asinore is in jail in Iran because he hasn't paid the fines, the government fines. That he paid some of them, but that he has not paid them all and the Iranian government has jailed him. We have no allegation in the complaint that Mr. Basiji has paid any money to Iran or has completed the transaction. What we have is a complaint and we have only a complaint. We have some representations, not in the record really, about the fact that some more money may be owed to Iran. But as between the asinore and the assignee, do we have any suggestion that any money paid to the assignee is ever going to get to Iran? No. Other than the fact, Your Honor, that this case is very different than what Judge Graber refers to, where it's a completed transaction. Here we're dealing with an assignee who steps into the shoes. In the case of the trans fare, we couldn't agree with that. But if the assignment is complete, that's my question. If somebody has paid money to an Iranian, and that's a done deal, and that relationship is over with, and now says, hello, I'm a Canadian, I want money, what difference does it make how he acquired the rights to that money if no more money is going to go to Iran? That's what I'm trying to figure out.  We have no evidence here that any money has gone yet to Iran. And two, the plaintiff is suing for money to go to Iran. Under any circumstances, he steps into the shoes of an Iranian. Well, that's not true. Because, in fact, it seems to me where we really are is if this matters, we have to rematch, get back. But it isn't true that he's suing to get money to go to Iran. He may have paid $5,000 to the person in Iran to get whatever he could get, and that's the end of it. He's going to keep whatever he gets. He's still stepping into the shoes of an Iranian. All right. And the court would be ordering the transfer of funds. To a Canadian who may keep it. And whom I get encouraged to do it again. The executive order specifically in section 2E refers to shams such as assignments. But any approval, financing, facilitation, or guarantee by a United States person wherever located. This issue may have nothing to do with the interpretation of the contract. It may have to do with the application of the illegality doctrine. And not the contract. The interpretation of the executive order. Yes, ma'am. And that was the executive order. I understand what you're saying. I agree with you about the executive order. But that doesn't necessarily have anything to do with how this would spin out in the application of the illegality doctrine. Of the? Illegality doctrine. The defense is that this is an illegal contract and we should not enforce it even if you owe all this money. That's right. Even though it was illegal, we still might have reasons to enforce it. Our defense is that the President has said, and when the President issues an executive order backed by an act of Congress, it's two branches of our government that have said. But I guess the thing that I'm struggling with is the executive order and statute, the whole thing, says no money to Iran. Don't encourage those people. But my question is, if that's a done deal, if, to use Judge Berzon's example, $5,000 has already gone to Iran, and in exchange for that, someone gets some contractual rights, and that someone isn't Iranian. He's Canadian. What difference does it make? I guess I don't see the problem. Judge Graber, I'll go back to the statute. I'll go back to the executive order, 2D. Facilitating, guaranteeing, financing any transaction or dealing which includes facilitating an action involving Iranian goods. So you're saying even if whatever money is done is already done, it's still illegal? Mr. Goh would still be facilitating a transaction involving Iranian goods if he were to pay a Canadian, who in turn either has already paid or would pay the Iranian. That's the issue. He might get into another deal to pay a future Iranian, become a factor for illegal transactions. He can get money on this one. It's a nice little business you can do by factoring illegal transactions. Thank you, Your Honor. I think that's answered your question. Why don't we now talk about the contract? The guarantee? It's a very similar… I'm sorry. If you go ahead from where you are to where you are. If you're interested in the contract, Your Honor, the court asked us to address the issue of if it reaches, if it states and determines that the contract is illegal under the executive order, could it still enforce it? We have no law on this, right? We have a law on this. No, on the executive order we have no law. No law on the executive order. No law on this point on the executive order, Your Honor. On anything of that sort. What we have is a second circuit. Exactly. Which is either dicta or premise. Depending on how you read, let's take a language I'm not going to use in that case. That's correct, Your Honor. It's either dicta or predicate. It's either saying, let's assume for appropriateness, it's either some odd wording, postulate, whatever the heck that means. What we do have, Your Honor, are a number of cases, starting with a case cited by the court Kaiser, which discusses the illegality doctrine and how it's applied by federal courts. And the court cited Kaiser first, and I believe that's because it's a United States Supreme Court case. Let's talk a little bit about this. This is not an act of Congress. This is an actual precedent taken pursuant to an act of Congress. And what it does is it modifies or preempts state law. That's our position, Your Honor, and I agree with you. Yes. Absolutely. And I think if you don't see any problem in the fact that the vehicle that preempts state law is not actually an act of Congress itself, but is a unilateral action of one branch of our government, and that is the president. No, and in Damon Moore, the Supreme Court said when it's an act of the president based on an act of Congress, it's entitled to even more deference. It's to be given the widest latitude of judicial interpretation. We cited Damon Moore in our brief. When the president acts pursuant to an express or implied authorization from Congress. But in Damon Moore, if I'm not correct, that was the act authorizing the Iranian claims tribunal. And that was a very specific authorization by Congress for a very specific action by the president, dealing with a specific foreign policy problem. If I read the statute here, it's much more general. It's based on the Emergency Powers Act. Yes, right. And it basically says we delegate to the president the decision when to make things contactally legal. Yes. And this may be sort of one of those things that you have to go back to law school. I think it's a good place right here. But I remember the delegation cases going back to check the poetry and the like. And I'm, this is a real question. I'm wondering whether we are not reaching the outer edge of the delegation when Congress delegates to the president specific power to preempt state law. There are several problems there, too, vis-a-vis a specific Congress for the situation. I'm not sure this was briefed in time, so maybe it's not in play, but it is a little troublesome. I can assure you the court, it wasn't briefed. And it's going far beyond my preparation, Your Honor, because that is an issue that has come up in this case. If I understand Justice Kaczynski's question, it's related ultimately on the illegality question. Are we applying federal or state law? You apply federal law. There's no question. Not whether it's illegal, but whether it's possible. Judge Kaczynski, explain why. It preempts. This federal law preempts any state law. State Iranian law applies. Well, it makes it illegal, but as to the question of whether we're going to enforce it, as to whether, which illegality document do we apply? It doesn't make it a federal contract. The Supreme Court, in Kaiser, the case cited in Kaiser. But Kaiser was a federal contract. It was a collective bargaining agreement, which was always judged according to federal law. Absolutely. But what the Supreme Court said about the federal court's duty is, it is well established that a federal court has a duty to determine whether a contract violates federal law before enforcing it. The Supreme Court didn't limit that to the facts of that particular case, which was a federal jurisdiction. Okay. We now decide whether it violates federal law. I'm leaving aside Judge Kaczynski's question. Let's assume nobody did that. Okay. This is a valid executive order, and let's say we decide that it doesn't violate – it does violate federal law. Then the next sentence by the Supreme Court is, the power of federal courts to enforce the terms of private agreements is at all times exercised subject to the restrictions and limitations of the public policy of the United States as manifested in federal statutes. Where the enforcement of private agreements would be violative of that policy is the obligation, of course, to refrain from such exertions of judicial power. This particular statute couldn't be more appropriate for vast federal policy. It's a statement by the President of the United States that there is a national emergency and that no United States system, no matter where that United States system is, can do business with Iran, can stimulate the Iranians. So the American driving through Italy and who buys a stop to attack with gas is violating the executive order. Hypothetically, the American driving through Italy – Ah, hypothetically, that's what we do here. Buying gas in Italy is buying an Italian product. It's not identified as an Iranian product. There are many, many exceptions in the statute that deal with changes in the Iranian product. Why don't you say yes? I have a problem, Your Honor, saying that. I'm sort of wondering why the answer isn't yes it is, and so what? But you may have a reason for fighting the hypothetical. Because it's so offensive, Your Honor. What's offensive about that? Raising that and the purchase of a suit that has Iranian traces. Well, if you don't pay for the gas, presumably the suit in Italian courts, the Italian courts don't pay attention to U.S. executive orders. So I'm not exactly sure why you're fighting that. In answer to the court's question, it may violate the law. Because it's hypothetical, we don't have citizenship. How about test-poisoning the Persian heart from one to more than one? Except that's an old Iranian product. I see, and that falls under common enterprise. Actually, yes, Your Honor. It's something that was already completed, and that was Judge Graber's question. So it's an antique, it's an old, it's a pre-1996 rug. You'd have one answer, and if it was a rug that somehow was smuggled into the country, despite the ban, you'd have a different answer. Judge, as you see, I'll give you all of those as violations of the statute. Okay. Because the President couldn't have been clearer. Not only President Clinton. But not just the pre-existing rugs. Anything that was in the country before the ban would be... Actually, President Clinton's order dealt with contracts and other existing rights. It didn't deal with Persian rugs that I saw. I see, so simply permanent origin is not enough. It has to be something that is then owned by Iranians. And a present contract or something that is presently sought to be enforced. Okay, fair enough. You have three minutes. Thank you, Your Honor. If there are no further questions, I would like to reserve the hour. Thank you. We have a call for the counsel. Mr. Applegate, right? That's correct. Oh, who had him? Yes, Mr. Applegate. I just wanted to say good afternoon, Your Honor, and may it please the Court that Doug Applegate for the appellee, Mr. and Mrs. Cigi. The Court sent out a letter asking a question, and the question was are we bound by... Let's start first with the actual executive order to find out whether this is illegal. Because the district court had it was not, and are you still arguing that it's not, or are you willing to concede that it is? Oh, I'm absolutely arguing that it is not illegal. All right, so that's a prior question, then, because if it's not illegal, we don't have to worry about whether it can be enforced despite the fact that it's illegal. Correct. You can decide on my side by you.  And I'd like you to tell me why this is not a transaction by a United States person, assuming the complaint, wherever located, guaranteeing goods, a transaction related to goods or services of Iranian origin. Why isn't that just what this is? I will give you a couple of reasons why that is not an accurate interpretation of the executive order. One is the absurdities that would arise, and those absurdities include we don't have to pay the moving company who moves the Iranian rug from Baltimore to New York. We don't have to pay the hotel for storing our Iranian diamond necklace in the safe. Wouldn't it depend on whether those things were in Iranian hands at the time of the executive order? If you have a person lugging a family for generations, I don't think moving that would be covered, just the fact that it happened to... It would have had to have been something owned by an Iranian in 1996. Well, the cause is... Am I misreading this? Well, that would be the first interpretational question you would have to ask. It says goods or services of Iranian origin. Those are the words. It doesn't say a present Iranian origin. So we can interpret it to deal with that problem by saying it has to be current Iranian origin. To interpret it to deal with some of your other hypotheticals by suggesting some level of directness of involvement of the people. But here we have a first-level guarantee. Leaving aside the S&R or S&E problem, the money would quite possibly go directly to the Iranian government. We still have the issue of the smuggled Persian rugs. I don't want to leave that aside. If we are reading goods or services of Iranian origin to mean of Iranian origin at the time of the executive order... We don't need to deal with that here, because here it was. But, just as if somebody smuggles in a rug, and the moving company doesn't realize it's a smuggled rug... You know what? This strikes me like a vagueness challenge, where your product isn't vague. It's like saying you can't steal money or something else of value, and you've stolen money, but you're arguing about what something else of value means. I guess it seems to me that, as applied to this transaction, there's no ambiguity, no vagueness. Please remember that there is nothing in the record to indicate that Mr. Arshi of Iran had any idea that the guarantor was a United States citizen. But that's not required under the executive order. What is required is that the U.S. citizen know that he's dealing with... have reason to know that he's dealing with... Correct. So the analogy would be the U.S. citizen... That goes and may go very effectively to the illegality enforcement question. It may be the most important thing about the illegality enforcement question, but I don't think it has to do with this question. Well, I have to disagree with you, respectfully, because I think the exact analogy would be the U.S. citizen knows that they have an illegal smuggled Persian rug. They ask to have it moved, a transporting arrangement expressly made illegal by paragraph D. The company doesn't realize that it's a smuggled rug, but the United States citizen does. The point of view of the United States person, and now the next question is what do you do about that? So the question is that, the first question, is that illegal? Then, if it is illegal, that's what you do about it. Let's assume that it is illegal. Let's move to the next piece. I definitely want to do that. I want to bring out one more point on illegality because it hasn't been brought out yet, and it's another anomaly that would exist. On March 17, 2000, two months after the guarantee in this case, the regulations were changed to grant a general license to United States citizens to import food products from Iran and the United States. If paragraph D truly is not linked at all to paragraph section 1 of that board, then we have the anomalous situation where it is perfectly legal to guarantee the import of shrimp into the United States, but it is illegal to guarantee the import of shrimp to Hong Kong. And I would ask the court, why do you find that anomalous? Why do I find that anomalous? We want to feed our own people, but still keep Iran at bay. I think that's a good way to describe that. I mean, it's a foreign policy choice that maybe you and I would make differently, but it doesn't strike me as irrational. It doesn't strike you as irrational? Well, then we do disagree on that. It strikes me as irrational. Well, prescribe me that it's irrational. There is no procedure to get a license to guarantee a wholly foreign transaction under this executive order. But we have a doctrine going back quite a ways that says our government doesn't have to prohibit all evils. It can prohibit some and not others, even some that may to us seem equally bad. It can proceed so long as the two things are rationally distinguishable, and to me, the transfer of shrimp to Hong Kong strikes me as very different, or at least rationally distinguishable from the transfer of shrimp to the United States. Well, but the transfer of the shrimp is not illegal. Nobody's ever suggested the actual transfer is illegal. So we have a situation where we can... No, no, no, I understand, but that's the predicate for the illegality. You know, the one transaction, guaranteeing the one transaction is illegal, guaranteeing the other transaction is not illegal. And the two just don't strike me as being the same. They strike me as having different implications. And they're both rationally distinguishable. The President could rationally say... They both provide money to Iran, but in one case, I mean, I think citizens benefit directly by getting more food, and in the other, they don't. I mean, there may be other reasons, too, but... It's not a very reasonable interpretation, interpretive principle. I guess that's what we're saying. Yeah, the interpretive principle is, does it make rational sense to isolate Paragraph D from Section 1? The trial judge said, no, it doesn't, because there are too many absurdities that follow from that. They include making it illegal to transfer a smuggled Persian rub from one coast to the other. It just seems so... The language is perfectly clear. They wanted to say, or related to, that the goods or services of Iranian origin are under control by the government of Iran that are being exported or imported to the United States. They only needed to say that, and they didn't say it. And there's a perfectly rational reason for this rule, which is they don't want money going to Iran, as well as goods or services coming or going. Could we assume for the moment that it is illegal and what is your answer to my puzzling about the nature of the assignment? Is it simply impossible to tell from the procedural posture of the case whether any money that will go to Iranians is already gone or not? On this record, there's no way to know. There are, as I see it, three options. One is that it is a completely done deal where the Canadian has paid whatever money he's going to pay. That's in Iran, and he gets to keep everything else. It could be a situation where he has a contractual obligation to remit whatever he gets on to Iran, or it could be something in between. We just don't know. We also don't know whether the person in Iran owes any more money that's going to go anywhere beyond him. That's correct. We don't know that either. This is at the 12B60. All we have for the court to review is what is in the complaint, and the complaint does not address any of those issues. In terms of the enforceability question, does it matter at all that the executive order itself says notwithstanding any contract entered into several different times? Could that be registering that any contract to the contrary is simply not contract? I don't believe so, no. It's certainly not the way I have interpreted it. Notwithstanding any contract to the contrary simply means that we are not deferring to existing contracts. But it also doesn't say we are invalidating any contracts. It just says that certain contracts become illegal, and then the court has to decide how to deal with that. Some illegal contracts you enforce, some you don't. Do you have an answer to the question of whether we're following federal or state laws to that question? It is state law. I don't think there can be any legitimate question on that. I don't believe there can be any legitimate question on that. We are applying the state law doctrine of illegality. This is a diversity case. It applies state law. Why would that be the case? If the legality is created by federal law, why wouldn't you apply federal law to legality in order to effectuate the policies of federal law? If federal law, for example, says all contracts for the transportation of liquor across state lines are illegal, unless you get a stamp from the treasury. I'm making this up, but it may well be such a statute. I don't know, but let's say that's what federal law says. Wouldn't we then, if you had a contract to transport liquor from Nevada to California and you didn't get the stamp, would we really allow state law to undermine federal policy by saying, oh, well, we get paid anyway because, you know, whatever? It strikes me that without having a federal policy the effects of illegality are really undermining the legality doctrine itself. You don't even have to go with your hypothetical. Let's go with a simple law that we all know. Veterans benefits, veterans loan. You can only get a veterans loan for a house that is purchased by a veteran. Federal law. Johnson v. Johnson was the case that was actually mentioned in the court's letter had to decide what you do when that law is violated. That was a state California case. They applied state California law. Also in the transfer international case. That was where there was the use of the Iranian aircraft inadvertently to transport humanitarian supplies in violation of the executive order. They examined whether to enforce that under state law. How do you think, we're asking this question because we think it might matter. Do you think it would matter? Would it apply state or federal law? I don't. I think the principles are roughly the same either way. They're going to be very close to the restatement principles. In fact, at one point I thought that California law differed slightly from the restatement principles, but I did some more research on that and I'm now fairly convinced that California does adopt the restatement principles. I think the federal approach would also be the restatement principles. I just feel somewhat more hard-nosed than in California cases about not enforcing illegal contracts. There's no way to tell from that decision because that wasn't the issue yet. They were saying in that case that the litigants had to be able to raise the issue of illegality. They didn't say how, what doctrine would be applied, whether it was if the contract were found to evade in some portion of federal law that it would not be enforced. None of those issues were in that decision. So I don't think that you can rely on that decision to decide what is the federal illegality doctrines if there is a federal common law on this question. Generally, federal common law very closely follows, and in deciding what is federal common law, the courts look to the recognized state principles, such as are set forth in the restatement of conscripts. So getting to the substance then, what considerations would you think we should apply here, assuming for the moment federal law matters? How does it come out? The factors... Do you think we can do an entire record on question one? No, it's always a balancing test, and it's a very unique situation where any balancing test can be decided on a 12 v. 6 motion. And I don't see anything in this record that says this is that exceptional case where... Well, federal law says it's illegal. Man, what's so hard about that? What is it about? Well... It's illegal? You don't collect? Fine. That has not been pronounced as the federal position on whether to enforce the illegal contract or not. Assume the other case. Assume that we rule that, in fact, it's illegal under federal law. What else is there to decide? Well, there's... Just as in transfer international... I'm not saying transfer... There is transfer international, but this isn't also the case that you mentioned earlier, Your Honor, from New York, which was the... The National Petrochemical? Correct, which... Well, National Petrochemical was at most dicta, but more likely it was just a premise. They said, well, assuming this is the case, it doesn't matter anyway. I don't see any case that says that once federal law says it's an illegal contract, you can enforce it anyway. What would the obvious thing to do is at that point say, well, too bad, you know? Well, certainly that's what was said in the transfer international case. I'm sorry? The transfer international case. That was a court of claims case, so that wasn't a public decision, but that was certainly... I think it's called the court of federal claims. Yeah, the former judge... Of course. So I defer to that. But that case certainly did apply state law, but if it was federal law, it would still do a balancing test. They said that it's an easy trap to fall into to decide that just because something is illegal, you don't enforce it. There's often times where if you don't enforce an illegal contract, you actually encourage the illegal activity, kind of the brokering of illegal transactions, which Your Honor mentioned earlier. You create an incentive for people to violate the law, which is then against public policy. So I guess how would that work here? Let's say we say, okay, it's illegal, you can't collect. How would that possibly encourage illegality in the future? That would encourage illegality by allowing people such as Mr. Goh or Dual Citizens to try to enter into transactions for Iran, take the benefit if the transaction works out well, but avoid any downside if the transaction doesn't work out well. So there is a great incentive for people in his position to try to arrange for contracts, to harvest whatever it arranges. Just because I'm curious, why does the Dual Citizen have to do it? Well, because that makes it much more difficult for the other side of the transaction to know whether they are violating United States law, so they don't have the ability to know and protect themselves by not violating the transaction. Do you think it allows quasi-fraudulent conduct by Americans, particularly Americans for Iran? Yes. I mean, it would encourage fraudulent conduct. Well, you're actually saying just a little bit more than that, because encouraging fraud is not a good thing, but it's not a concern of ours, because it doesn't violate federal policy. I think what you're saying is it would encourage U.S. citizens, maybe with dual citizenship, to actually go ahead and enter transactions that feed money to the government of Iran, which is successful, they wouldn't challenge, and then... If unsuccessful, they don't have to pay the share. So the loss of this, the fact that it goes badly, they can walk away from it, would make it more likely that they would feed money to the government of Iran. Absolutely. That, I think, is your point. That is my point. And there's the other issue as well, is we want to identify people who violate the law, and if we tell people in Mr. Arshin's situation that there's no sense in going to the United States to sue this guy, then the conduct never comes to light. It's kind of like the Kuytem situation, where we encourage whistleblowers, even if they themselves violated the law, we encourage them to come forward and we give them money. We let them collect in court because there's a public policy benefit of identifying the wrongdoers. Here we have identified the wrongdoer because of the litigation. Having identified the wrongdoer, other than the fact that this contract might not be enforceable, or is illegal, might be illegal, might be enforceable, is Mr. Gore subject to any kind of sanctions? He is. He's subject to imprisonment. He's subject to fines. For violating the executive order? Correct, for violating the executive order. It's written right in there. And that's actually a doctrine that is applied under state law, that when you have specified penalties... What kind would he have committed in your judgment? He would have violated Section D. I mean, my argument, of course, is that he didn't. But executive order is not a criminal statute. You clearly cannot convict somebody of violating an executive order. You have to have some law passed by Congress, preferably in Title 18, but maybe it's another title, that has clear criminal sanctions. Say, if you do X, if you violate an executive order, you are guilty of a crime. I'm just not sure what... I don't have that cited in front of me, but I am confident that those have been implemented, and that there are both civil penalties, I believe it's up to $50,000, but I may have my number wrong, as well as criminal sanctions that have been adopted pursuant to this executive order. So the violation does carry specified penalties. And, in fact, if you check the reply brief of the appellants here, they say the reason you don't have to warrant... So what you're saying is this would sort of smoke out... This would cause people like your client to smoke out U.S. citizens who violated the executive order. But then we're still stuck in a situation where, if we allow your client to correct, we're really not encouraging the conduct. We are rewarding the very conduct that the executive order misprohibits. No, that's actually not true. The executive order doesn't prohibit anything my client did. The executive order prohibits what Mr. Goh did. That's an interesting and unusual feature, it seems to me. That what's illegal here is not the subject matter of the transaction, but the auditory. Correct. Correct. And so if we want to discourage that conduct, we have to make the wrongdoer, the person who violated the law, pay. You don't have to make people wary of dealing with people like them. People like your client are wary. So they say, oh, well, we don't want to be in the shoes of poor Mr. Basigi, so we're going to be really, really sure to get a guarantee up front or, I'm sorry, a collateral up front or something to make sure we don't have to go into U.S. courts to collect this because they're going to be highly hostile to us. So incentives are there, I think. We can sort of speculate about them quite a bit. You can never know how these things play out. I think your time is up. I'll let my colleagues have questions. Thank you very much. I appreciate your time. Thank you, Senator. I believe, Mr. Lenz, you had three minutes. Thank you. And six seconds. We'll make it three minutes even. Judge Graber, you've asked this question twice with both of us. Judge Kaczynski answered it best. Why is it illegal if the Canadian has already paid the money to Iran? Because it would encourage, it would facilitate these deals in the future. It would. But I'm not hearing. Go ahead. I'm not hearing that the executive contract distinction should never matter because that's always going to be true. The executory contract distinctions are in state court decisions because what they say is once it's completed and in that situation, there's no longer a need to protect the public. For example, the Veterans Administration loaned 12 years old. There is no longer a need to protect the public. But it will encourage the next person to do it again. It eats up the entire idea. The court in all these cases determined that the conduct, the completed conduct didn't need protection by the statute and that enforcing the contract or enforcing the right wouldn't hurt anybody, especially those protected by the statute. In this case, it's the American people that are protected by the statute. The fact that the Iranian citizen may not receive the benefit of his bargain if all these facts claim the truth, or that Mr. Goh won't end up paying what he promised if it's true that he promised. That's the part that bothers me. It seems to me that when the executive order says, if you're an American citizen, don't do this, and the result of violating that is that essentially he makes a couple million bucks. That just strikes me very oddly. What is the rationale? It's an anomaly, yet what President Clinton and President Bush have said is that it's the law of the United States that Americans don't stimulate the Iranian economy. But once they have stimulated them, because that's what I keep coming back to. Martin's done that. Here's what Kaiser said in the California Supreme Court. I'll read that as well from Lewis and Queen. The court refuses to enforce the contract and it permits defendants to set up at Zilligabi, not out of regard to the defendant, not because you want to help Mr. Goh avoid paying two million, but only on account of public interest. That was in Kaiser. Again, even in the restatement, it refers to, I'm sorry, again in Kaiser, in such cases the aid of the court is denied not for the benefit of the defendant, but because the public policy demands that it should be denied without regard to the interest of the individuals. Here the court, the federal courts, should not concern themselves with the underlying contract. But should we concern ourselves with the fact that someone in your client's shoes will be encouraged to go forth and do this again and again? To go back to Judge Kuczynski's example, if there's no risk involved, he either wins financially or, at worst, he doesn't lose because he'll never be held to account. That may be an unfortunate side effect of... In fact, he now has two million dollars, put more to go and do it again. An unfortunate side effect of enforcing the law. I took Judge Kuczynski's example to mean that Iranians will be encouraged to assign their contracts to others to avoid the law. Well, both may be true. Both may be true, certainly. Your client would be wildly encouraged if he could get away with this. And Judge Kuczynski also pointed out that there are other remedies, criminal and civil sanctions, available to the United States government should it choose to enforce those against those who violate the executive order. And so there are adequate remedies for the government to follow. They should never have mixed law and economics. It was a bad move. I would like to say that under any standard, the balancing test is not a... It can be done at this stage of the game. It's very simple. Even if you went as far as to use the restatement balancing test. Isn't it true that unless we're going to read Kaiser Steel as being an unalterable rule and if we're going to start looking at any of these subfactors, we have to know something? Thank you for asking that question. There are situations recently... This is transfer, which I consider to be the most favorable case cited by the court for Mr. Buscegi. It's unenforceable on grounds of public policy if legislation provides it's unenforceable and it's clearly outweighed by the circumstances of public policy against the enforcement. Yesterday's Time Magazine, March 17 Time Magazine, mentions the Iranian nuclear threat. I brought it with me. This is not just an idle executive order dealing with economic... Exactly. All right, let's take your example. Not your example. If we thought that this money was going to go in the conference of the Iranian government, then we would be concerned about the Iranian national nuclear threat. If we learned after a remand that Mr. Buscegi, that the Afghan needs, has paid whatever he's paid and any money that he gets he's going to keep, then it has something to do with the Iranian nuclear threat. But Your Honor, it does. Section 2E of the executive order, or 2D, says you can't engage in sham transactions to avoid the effect of the statute. You can't have assignments here and assignments there. But as to the illegality doctrine, if we thought it was something other than absolute, it would matter what we thought was going to happen to this money. If you interpreted the executive order to allow an Iranian to contract with some national of another country, foreign national of another country, to engage in deals with the United States... We're assuming this is all illegal. For present purposes, the whole thing's illegal. Still, what we do with it might matter to know where the money was going. Your Honor, I believe the overriding public policy of the national safety, foreign policy, and economic well-being of the United States eclipses any other issues... I think we understand your position. I want to thank counsel on both sides in this case. I thought it's a difficult case, and I thought both arguments were superb. Unfortunately, having really good lawyers makes our job more difficult. So let me suggest that maybe having now argued the case, having heard our questions and our doubts, maybe this would be a good time for counsel to talk about the possibility of settlement. We have a superb mediation staff in the 9th Circuit, and if counsel thought it was at all promising, we would defer submission for, let's say, a week and give counsel a chance to discuss with each other, perhaps contact our mediators, and see whether this is at all hopeful. It's not a clear-cut issue. It's a difficult issue. It's an issue of some significance, obviously, but it can be avoided if it could be settled somehow. Does counsel have any interest in this? Any thought on this might work? Your Honor, I believe it's always appropriate to talk about resolving the case, and I think we would have to check with our client and... Is that okay? Would you like a... We were previously contacted by the mediation program. Again, I am not... We were happy to... We have not conferred, so I have no idea what we're going to do, but you have heard what our questions are, and it should be abundantly clear to both of you that it's a hard case that could go any one of a number of ways, and there are expenses of further litigation and so on. So if counsels seem amenable, why don't we defer submission for a week? Counsel can talk here now, and we would encourage you, and I think my colleagues join me in this, strongly encourage you to contact our mediation staff. If, in a week, we get a letter from counsel asking for further time, we will defer submission, or if you are working with a mediator, if you ask our mediators to send us an internal memo asking for more time, you will find us extremely generous and unanimous in giving you more time to resolve the case. Again, I thought it was really very well done by both counsels on both sides, and very helpful and not helpful at the same time. We will... So we'll defer submission. We are now done with the cases. As we said earlier, we...
judges: Kozinski, Graber, Berzon